# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PIERRE WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-1729-PLC |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of *pro se* plaintiff Pierre Watson, a federal prisoner, for leave to commence this civil action without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $1.00. Additionally, for the reasons explained below, the Court will dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff avers he asked his institution to provide him with a copy of his inmate account statement, but was told it would not be provided. Therefore, the Court will assess an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances.").

**Legal Standard on Initial Review**

This Court is required to review a complaint filed *in forma pauperis* to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). This Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court

should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## Background

In the instant complaint, plaintiff claims his civil rights were violated during criminal proceedings in the matter of *United States v. Watson*, No. 4:15-cr-440-AGF (E.D. Mo. 2015). In that case, plaintiff was prosecuted and convicted of offenses related to a counterfeiting scheme, and sentenced to serve a total of 84 months in prison. Assistant United States Attorney Tracy Berry represented the government, and Special Agent Kristine Scowcroft was part of the investigation. Plaintiff's convictions and sentences were affirmed on appeal. *United States v. Watson*, No. 17-2558 (8th Cir. 2018). Events in plaintiff's criminal case relevant to these proceedings are provided, *infra.*

On May 31, 2019, plaintiff filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence to bring multiple claims of ineffective assistance of counsel by his trial attorney, and prosecutorial misconduct by Berry. *See Watson v. United States,* No. 4:19-cv-1545-AGF (E.D. Mo. 2019). An evidentiary hearing was held on March 10, 2021. As of the date of this Memorandum and Order, the matter remains pending.

The instant complaint is the second civil rights complaint plaintiff has filed in this Court to allege his civil rights were violated during the proceedings in *United States v. Watson*, No. 4:15-cr-440-AGF. On March 18, 2020, plaintiff filed a complaint pursuant to *Bivens v. Six Unknown*

3

*Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against Berry and Scowcroft. *See Watson v. Berry, et al.,* No. 4:20-cv-423-SNLJ (E.D. Mo. 2020) (hereafter "*Watson I*"). In its June 22, 2020 Memorandum and Order, the *Watson I* Court summarized the underlying criminal proceedings and plaintiff's claims as follows.

> The events relative to plaintiff's complaint arose from facts relative to his criminal case. *United States v. Watson*, No. 4:15CR440 AGF (E.D. Mo). Plaintiff's criminal issues began on August 30, 2014 when police officers with the City of Maryland Heights, Missouri approached a stopped car, and found Pierre Watson in the driver's seat. *See United States v. Watson*, No. 17-2588 (8th Cir. 2018). After arresting plaintiff on several outstanding warrants, the officers conducted an inventory search of the vehicle, and discovered: "four counterfeit payroll checks; a business check in the name of an insurance company; two pieces of perforated check stock; copies of a deposit ticket containing images of two checks drawn on a Bank of America account belonging to the Law Offices of J.P.; two photocopies of checks drawn on an Enterprise Bank and Trust account belonging to the law firm, Sher & Shabsin, P.C.; and a social security card that was not issued to Watson." *Id.*
>
> As a result of the investigation, a federal grand jury returned an indictment on January 23, 2015 charging Watson and his co-defendant, Darisha Taylor, with the following violations: (1) aggravated identity theft against both Taylor and Watson, in violation of 18 U.S.C. § 1028A, for using the name of J.F. during the commission of the crime of bank fraud; (2) possessing counterfeit implements against Watson, in violation of 18 U.S.C. § 513(b), for possessing a template of a Tokio Marine Specialty Insurance Check; and (3) aggravated identity theft against Watson, in violation of 18 U.S.C. § 1028A, for using the name of J.F., during the commission of the crime of bank fraud.[1]
>
> On October 2, 2015, the United States disclosed evidence pursuant to Rule 16. The evidence included the items seized from Watson's vehicle on August 30, 2014, two Maryland Heights police reports; a University City police report setting forth the passing of counterfeit securities by Jason Reese and others; a St. Louis County police report; records from Sher & Shabsin; and, a photographic line-up in which Watson was identified by Reese and others as the individual who provided the counterfeit checks. Counsel for Watson sought to dismiss Count 4 on the grounds that the Tokio Marine Specialty Insurance Company check was not a template within the meaning of 18 U.S.C. 513(b).
>
> Before the Court ruled on the motion to dismiss, the United States filed a superseding indictment on January 20, 2016. The superseding indictment included the following charges against Watson: (1) aggravated identity theft, in violation of

---

[1] The indictment had four counts, but defendant Watson was not charged in counts two and three. For ease of reference, the Court has not included the counts that charged only Darisha Taylor.

4

18 U.S.C. § 1028A, Watson and Taylor used the name of M.S. during the commission of the crime of bank fraud; (2) possessing counterfeit implements, in violation of 18 U.S.C. § 513(b), Watson possessed a Tokio Marine and Specialty Insurance Company Check; (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A, for possessing the name of M.S. during the commission of the crime of bank fraud.[2]

Watson renewed his motion to dismiss Count 4 at his arraignment. As a result of co-defendant Darisha Taylor's plea of guilty on January 22, 2016, and to address new information received by the United States, on January 27, 2016, a second superseding indictment was returned by the federal grand jury. Watson was the sole defendant in the indictment charging: (1) aggravated identity theft, in violation of 18 U.S.C. § 1028A, Watson and Taylor possessed the name of M.S. during the commission of the crime of bank fraud; (2) passing counterfeit securities, in violation of 18 U.S.C. § 513(a), Watson and Taylor passed a counterfeit Sher & Shabsin check in the amount of $869.50; (3) passing counterfeit securities, in violation of 18 U.S.C. § 513(a), Watson and Shontell Hill passed a counterfeit Sher and Shabsin check in the amount of $465.90; (4) passing counterfeit securities, in violation of 18 U.S.C. § 513(a), Watson, Temple and Courtney Lowe passed a counterfeit Restoration Temple Child Development Center check in the amount of $489.75; (5) possessing counterfeit implements, in violation of 18 U.S.C. § 513(b), Watson possessed a Tokio Marine and Specialty Insurance Company Check; (6) aggravated identity theft, in violation of 18 U.S.C. § 1028A, Watson used the name of M.S. during the commission of the crime of bank fraud; (7) tampering with a witness, in violation of 18 U.S.C. 1512(b)(1), Watson attempted to persuade Taylor to complete a fraudulent affidavit in the charged action.

Defense counsel renewed his petition to dismiss the charge of possession of the Tokio Marine template set forth in Count 5 of the second superseding indictment. The Court denied Watson's motion to dismiss on May 11, 2016. Because of continued investigation into the activities of Watson and others, a federal grand jury returned the third, and final, superseding indictment on May 18, 2016. That indictment set forth charges against Watson, S. Hill and Desiree Hill, but also referenced the involvement of Taylor, Reese, Courtney Lowe, and others in the conspiracy count. Specifically, the indictment charged defendant with the following: (1) conspiracy to defraud, in violation of 18 U.S.C. § 371, Watson, S. Hill, D. Hill, Reese, Taylor, Lowe and others engaged in a conspiracy to commit the offenses of bank fraud, identity theft, aggravated identity theft and passing counterfeit securities between the dates of July 9, 2014 and May 22, 2015; (2) bank fraud, in violation of 18 U.S.C. 1344, to further their bank fraud scheme, Watson and S. Hill withdrew the proceeds of a counterfeit $465.90 Sher & Shabsin check deposited into S. Hill's bank account; (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A, Watson used the name of M.S. during the commission of a bank fraud scheme; (4) aggravated identity theft, in violation of 18 U.S.C. § 1028A,

---

[2] The indictment had four counts, but defendant Watson was not charged on counts two and three. For ease of reference the Court has not included the counts that charged only Darisha Taylor.

5

Watson used the name of M.S. during the commission of a bank fraud scheme; (5) passing counterfeit securities, in violation of 18 U.S.C. § 513(a), Watson and S. Hill passed a counterfeit Sher & Shabsin check in the amount of $465.90 to S. Hill's bank account; (6) passing counterfeit securities, in violation of 18 U.S.C. § 513(a), Watson and Taylor passed a counterfeit Restoration Temple Child Development Center check in the amount of $489.75; (7) possessing counterfeit implements, in violation of 18 U.S.C. § 513(b), Watson possessed a template of a Sher & Shabsin check in order to create counterfeit checks; (8) tampering with a witness, in violation of 18 U.S.C. 1512(b)(1), Watson attempted to persuade Taylor to complete a fraudulent affidavit in the charged action.[3]

Plaintiff pled guilty to conspiracy to defraud in violation of 18 U.S.C. § 371 (Count One); bank fraud in violation of 18 U.S.C. § 1344 (Count Two); and passing counterfeit securities in violation of 18 U.S.C. § 513(a) (Count Nine)[4]. Following a bench trial, the Court found Watson guilty of three additional charges: passing counterfeit securities in violation of 18 U.S.C. § 513(a) (Count Eight); possessing an implement suitable for making counterfeit securities in violation of 18 U.S.C. § 513(b) (Count Eleven); and tampering with a witness in violation of 18 U.S.C. § 1512(b)(1) (Count Twelve). *United States v. Watson*, No. 4:15CR440 AGF (E.D.Mo.). Plaintiff was sentenced on June 16, 2017.  The court sentenced Watson to 60 months' imprisonment on Count One and concurrent terms of 84 months' imprisonment on Counts Two, Eight, Eleven, and Twelve. The court directed that the sentences imposed be "consecutive to any sentence imposed in United States District Court, Eastern District of Missouri, under Docket Number 4:16CR00336 JAR and the sentence under Docket Number 4:15CR00350 CDP."

Plaintiff appealed the conviction and sentence to the Eighth Circuit Court of Appeals. *See United States v. Watson*, No. 17-2558 (8th Cir. 2018). On appeal, plaintiff argued that (1) the evidence was insufficient to sustain a conviction on Count Eleven; (2) the District Court exceeded its authority by directing the sentence to run consecutive to a sentence in another case that had not yet been imposed; and (3) the district court abused its discretion by refusing to allow him to withdraw his guilty pleas to Counts One and Two. The Eighth Circuit affirmed the conviction and sentence of the District Court. *United States v. Watson*, No. 17-2558 (8th Cir. 2018).

. . .

In the instant complaint, plaintiff alleges that Assistant United States Attorney Berry committed prosecutorial misconduct when during grand jury proceedings relating to plaintiff's criminal case, she purportedly submitted perjured testimony

---

[3] The indictment contained eleven (11) counts. Plaintiff was named in eight counts in the indictment, but he was not named in counts 3, 6, 7 or 10. The numbers above do not correspond to the counts in the indictment.

[4] Watson's plea to passing counterfeit securities prior to the bench trial was eventually withdrawn and then this particular count of the indictment was dismissed by the government prior to trial.

6

>from Scowcroft. Plaintiff asserts, in a conclusory fashion that the evidence presented at the three grand jury proceedings against him was not enough to sustain "probable cause" to support plaintiff's arrest and indictment.
>
>Specifically, plaintiff accuses Agent Scowcroft of wrongfully summarizing the contents of plaintiff's vehicle, as inventoried by a 2014 Maryland Heights Police Report, and he states that this was a violation of his 4th Amendment rights.
>
>It appears that plaintiff's specific argument centers around his assertion that Scowcroft testified at the first grand jury proceeding that plaintiff's car had been found with a "template" from a company called Tokio Marine Specialty Insurance Company, and that he was purportedly using as an implement to make a counterfeit or forged security. Plaintiff argues that by the third superseding indictment, defendants had changed their grand jury testimony to [e]licit that plaintiff had been found with a Sher & Shabsin photocopy of an actual Sher & Shabsin check in his car which he was using as a template to forge new checks.
>
>Plaintiff argues, however, that there were not any Sher & Shabsin checks found in the Maryland Heights traffic stop in August of 2014. Therefore, he claims that defendants presented false evidence to the grand jury in order to obtain the third superseding indictment.

*Watson I*, doc. # 9, p. 3-8.

The *Watson I* Court dismissed the action after determining the complaint failed to state a claim upon which relief may be granted, and plaintiff appealed. On December 2, 2020, the United States Court of Appeals for the Eighth Circuit affirmed the district court's decision, and issued its mandate on January 25, 2021. *See Watson v. Berry,* No. 20-2510 (8th Cir. 2020).

Turning once again to plaintiff's pending 28 U.S.C. § 2255 motion, the Court notes that the following events from those proceedings have some relevance here. Prior to the March 10, 2021 evidentiary hearing, plaintiff filed a motion seeking the disclosure of grand jury transcripts. In support he argued that inconsistencies between the original indictment and three superseding indictments raised questions about whether the grand jury transcripts would reveal that exculpatory evidence was withheld from him. On July 8, 2020, the Court denied petitioner's motion after reviewing the grand jury transcripts *in camera* and determining they did not support plaintiff's allegations. *See Watson v. United States,* No. 4:19-cv-1545-AGF, ECF No. 86.

7

Plaintiff also moved the Court for an order compelling Berry's testimony during the evidentiary hearing. In support, he argued Berry's testimony was required on the topics of the reception and disclosure of discovery documents in his criminal case, information concerning the contents of investigative reports replied upon in the criminal case, and information about whether such reports were presented to or relied upon at the grand jury proceedings. Plaintiff further asserted Berry's testimony was necessary to prove his claims of prosecutorial misconduct, referring specifically to the Maryland Heights Police report and the Secret Service report concerning his arrest. Plaintiff argued that the reports supported his claims because while the August 2014 Maryland Heights Police report did not list checks bearing the name Sher & Shabsin, P.C. (also "Sher & Shabsin") as among those recovered from his vehicle, the Secret Service report reflected such checks were recovered. Plaintiff argued that Berry was aware of the inconsistency between the two reports, but failed to disclose the inconsistency to him or the grand jury, thus supporting his claims of prosecutorial misconduct. On September 18, 2020, the Court denied plaintiff's motion after determining Berry's testimony was unnecessary. *Id.* at ECF No. 124.

### The Complaint

Plaintiff filed the instant complaint on December 7, 2020 against Berry and Scowcroft, and against former United States Attorney Jeffrey B. Jensen and the United States of America. As indicated above, plaintiff again alleges his civil rights were violated during the proceedings in his criminal case, *United States v. Watson*, No. 4:15-cr-440-AGF. As in *Watson I,* plaintiff sets forth his claims and supporting allegations in a conclusory and disjointed fashion. He reasserts the claims he asserted against Berry and Scowcroft in *Watson I,* and he adds claims and parties. Plaintiff's claims and supporting allegations are as follows.

Plaintiff sues Scowcroft in her official and individual capacity under *Bivens* and the Federal Tort Claims Act ("FTCA") "for altering the August 30, 2014 Maryland Heights Police Report then

submitting the altered report to 'defendant Berry' in order to get an indictment and arrest warrant not supported by probable cause violating plaintiff's 4th amendment [rights] resulting in wrongful imprisonment and knowing the report to be false when 'defendant Berry' proceeded to the grand jury seeking the third and final superceding indictment." (ECF No. 1-1 at 10). Plaintiff also avers Scowcroft prepared a falsified report in August of 2015 to reflect that Sher & Shabsin checks were recovered during the August 2014 inventory search when in fact they were not. It appears plaintiff's claims that Scowcroft "alter[ed] the August 30, 2014 Maryland Heights Police Report" and his claim that she prepared a falsified report in August of 2015 refer to the same conduct, as there are no specific allegations that Scowcroft actually altered the Maryland Heights Police report itself. In any event, in support of his claim that Scowcroft falsified this evidence, plaintiff argues that because Scowcroft's report reflected that Sher & Shabsin checks were recovered from his vehicle and the August 2014 Maryland Heights Police report did not list such checks among those recovered from the vehicle, Scowcroft falsified the report. Plaintiff alleges in conclusory fashion that Scowcroft falsified other reports as well, and harassed his family and friends.

Plaintiff avers he sues Berry in her official and individual capacity under *Bivens* and the FTCA "for violating *Brady v. Maryland,* and violating plaintiff's 4th amendment [rights] by securing an indictment and arrest warrant not supported by probable cause which led to wrongful imprisonment from a malicious prosecution." *Id.* In support, plaintiff alleges Berry wrongfully withheld documents pertaining to Darisha Taylor, Desiree Hill, and Shontell Hill that the defense could have used to attack their credibility and/or argue against certain charges. Plaintiff further alleges Berry engaged in prosecutorial misconduct when she initiated an investigation into him, and when she proceeded to the grand jury in September of 2015 to seek an indictment based upon evidence she knew was fabricated. Plaintiff argues Berry knew the evidence was fabricated because she knew of the above-explained discrepancy concerning the Sher & Shabsin checks. He

9

claims Berry engaged in other forms of prosecutorial misconduct, including compelling Scowcroft to falsify the evidence and commit perjury; presenting false evidence to the grand jury on other occasions, including to secure an arrest warrant; and canceling proceedings. He states in conclusory fashion that Berry acted outside the scope of her duties, and maliciously investigated and prosecuted him. Finally, plaintiff claims Berry and Scowcroft "violated '42 U.S.C. 1985' by conspiring to deprive plaintiff of his civil rights" by engaging in the foregoing conduct. *Id.* at 8.

Plaintiff avers he sues the United States under the FTCA to redress violations of his Fourth Amendment rights committed by Berry and Scowcroft. Plaintiff further avers he brings claims of "municipal liability" against the United States and Jensen pursuant to *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 690-91 (1978), "because a municipality is liable 'when execution of a government's policy or custom, whether made by its' lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* at 5. Plaintiff further avers he sues Jensen in his official and individual capacity under *Bivens* and the FTCA for failing to properly supervise and/or train Berry, his subordinate. In support, plaintiff claims Berry's alleged violations of his constitutional rights were caused by Jensen's failure to supervise her and his "deliberate indifference to an obvious need to train the prosecutor[s] in his office in order to avoid such constitutional violations." *Id.* at 2.

Plaintiff does not indicate he has presented any FTCA claims to the appropriate federal agency and received a final decision from such agency, as required before invoking the judicial process. *See* 28 U.S.C. § 2675(a); *see also Mader v. United States*, 654 F.3d 794, 808 (8th Cir. 2011). Plaintiff seeks damages totaling $5 million.

After filing the complaint, plaintiff submitted two motions in an attempt to supplement it. The first motion is titled "Motion to Supplement Complaint." (ECF No. 9). In the motion, plaintiff states he wishes to "supplement his original complaint with the following attachments," and

10

without further explanation provides a copy of a "Motion to Alter or Amend Judgement Pursuant to Rule 59(e)" and accompanying exhibits he filed on October 14, 2020 in his pending habeas action, *Watson v. United States,* No. 4:19-cv-1545-AGF. The second motion is titled "Motion to Clarify and Request Disposition of Complaint." (ECF No. 11). In the motion, plaintiff explains he brought a municipal liability claim in the complaint in order to preserve his right to add the Maryland Heights Police Department and Officer Matt Schmitz[5] as defendants at an unspecified later date, and sue them for false arrest. He also demands that this Court dispose of his complaint. On April 8, 2021, plaintiff filed a petition for writ of mandamus in the United States Court of Appeals for the Eighth Circuit in which he averred his complaint had not been addressed. *See* (ECF No. 12). At present, the petition remains pending.

## Discussion

As the *Watson I* Court determined, to the extent plaintiff seeks damages against Berry, Scowcroft and Jensen in their official capacities under *Bivens,* such claims fail on the basis of sovereign immunity. *See Hartje v. FTC,* 106 F.3d 1406, 1408 (8th Cir. 1997). Also as the *Watson I* Court determined, to the extent plaintiff can be understood to claim Scowcroft, Berry and/or Jensen engaged in misconduct that caused him to be wrongfully arrested, convicted, and/or falsely imprisoned, such claims are barred. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his convictions, continued imprisonment, or sentences unless the convictions or sentences have been reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Id.* at 486-87; *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995). Here, because plaintiff's convictions have been affirmed on direct appeal, his motion under 28 U.S.C. §

---

[5] In the complaint, plaintiff identifies Officer Matt Schmitz as the police officer who arrested him on August 30, 2014 in connection with *United States v. Watson*, No. 4:15-cr-440-AGF.

11

2255 remains pending, and he has not demonstrated that his convictions have been declared invalid or otherwise called into question, plaintiff's claims are not cognizable to the extent they call into question his outstanding criminal judgment.

Additionally, to the extent plaintiff seeks to bring claims against Berry, Scowcroft or Jensen under the FTCA, such claims fail because the FTCA does not authorize suits against individual federal government employees. *See* 28 U.S.C. § 1346(b). Plaintiff's "municipal liability" claims brought pursuant to *Monell v. Dept. of Social Services of City of New York* against the United States and Jensen also fail. *Monell*, which held that municipalities may be held liable for constitutional violations, applies only to local governments. *See Monell*, 436 U.S. at 691 n. 54 ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes.").

The Court now turns to plaintiff's individual-capacity claims against Berry. As in *Watson I,* plaintiff claims Berry engaged in prosecutorial misconduct by allowing perjured testimony and false evidence to be presented to the grand jury in order to falsely secure an arrest warrant, and in order to falsely secure an indictment, presumably the third and final superseding indictment. Plaintiff argues the evidence was fabricated because it noted Sher & Shabsin checks were found during the inventory search of his vehicle, but the August 2014 Maryland Height Police report did not list such checks among those recovered from his vehicle. Plaintiff states Berry was aware of that discrepancy.

These allegations asserted in the instant complaint, which plaintiff has filed *in forma pauperis*, are duplicative of the allegations plaintiff brought in *Watson I,* which the Court dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). While the dismissal of *Watson I* "does not bar future litigation over the merits of a paid complaint making the same allegations as the dismissed complaint," a § 1915(e)(2)(B) dismissal "has res judicata effect 'on frivolousness determinations

12

for future *in forma pauperis* petitions.'" *Waller v. Groose*, 38 F.3d 1007, 1008 (8th Cir. 1994) (per curiam) (citing *Denton v. Hernandez*, 504 U.S. 25 (1992)). S*ee also Cooper v. Delo*, 997 F.2d 376, 377 (8th Cir. 1993) (§ 1915(e) dismissal has *res judicata* effect on future IFP petitions). Accordingly, to the extent plaintiff now seeks to bring the same claims against Berry as he asserted in *Watson I,* this Court determines that prior dismissal has *res judicata* effect and establishes that such claims are subject to dismissal.

Additionally, the foregoing claims fail on the basis of prosecutorial immunity, as do plaintiff's claims that Berry violated *Brady v. Maryland,* engaged in prosecutorial misconduct by wrongfully and/or maliciously initiating an investigation, presenting false evidence to the grand jury on other occasions, canceling proceedings, and compelling perjured testimony. As the *Watson I* Court wrote:

> Plaintiff seeks damages from Berry for wrongs she allegedly committed while initiating and pursuing a criminal prosecution, and otherwise acting as an advocate for the government during those proceedings. However, absolute immunity protects her from such claims. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (prosecutors are absolutely immune from civil rights claims based on actions taken while initiating and pursuing a criminal prosecution); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process"); *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (same).

*Watson v. Berry, et al.,* 4:20-cv-423-SNLJ, ECF No. 9 at 9. *Brady* violations fall within the scope of prosecutorial immunity. *See Imbler*, 424 U.S. at 431 n.34. Plaintiff's allegations that Berry acted maliciously or with an otherwise improper motive do not save his claims. *See id.* at 427-28 (there is no fraud exception to prosecutorial immunity); *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) (A prosecutor is immune from suit even if she knowingly presents false, misleading, or perjured testimony, or withholds or suppresses exculpatory evidence). Accordingly, the Court concludes Berry is immune from plaintiff's *Bivens* claims.

The Court turns to plaintiff's individual-capacity claims against Scowcroft. As in *Watson I,* plaintiff claims Scowcroft is liable to him for falsifying a report and submitting false evidence and testimony to the grand jury in order to secure an arrest warrant and indictment. As in *Watson I,* plaintiff argues that because the August 2014 Maryland Height Police report did not list Sher & Shabsin checks as among those recovered during the inventory search of his vehicle and Scowcroft's report and testimony did list such checks among the inventory, Scowcroft's report and testimony were false. These allegations asserted in the instant complaint, which plaintiff has filed *in forma pauperis*, are duplicative of the allegations plaintiff brought in *Watson I,* which the Court dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Accordingly, to the extent plaintiff now seeks to bring the same claims against Scowcroft as he asserted in *Watson I,* this Court determines that prior dismissal has *res judicata* effect and establishes that such claims are subject to dismissal. *See Waller*, 38 F.3d at 1008; *Cooper*, 997 F.2d at 377 (§ 1915(e) dismissal has *res judicata* effect on future IFP petitions).

Additionally, as the *Watson I* Court determined, plaintiff's argument is wholly conclusory and belied by the record. *See Iqbal,* 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]readbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements"). The Eighth Circuit Court of Appeals reviewed the record evidence in the appellate proceedings and observed:

> An inventory search of the vehicle revealed the following items: four counterfeit payroll checks; a business check in the name of an insurance company; two pieces of perforated check stock; copies of a deposit ticket containing images of two checks drawn on a Bank of America account belonging to the Law Offices of J.P.; two photocopies of checks drawn on an Enterprise Bank and Trust account belonging to the law firm, Sher & Shabsin, P.C.; and a social security card that was not issued to Watson.
>
> . . .
>
> The investigators discovered that from August 10 through August 19, 2014, the conspirators successfully passed six counterfeit checks drawn on the Enterprise

14

> Bank account of Sher & Shabsin. One of these checks, written for $465.90, was deposited into an account at U.S. Bank by co-defendant Shontell Hill. The counterfeit Sher & Shabsin checks were similar, but not identical, to the two photocopied Sher & Shabsin checks seized during the inventory search. The name of the bank, the bank routing number, and the five digit length of the check numbers matched Sher & Shabsin's account. On the counterfeit checks, a transposed letter changed "Sher & Shabsin" to "Sher & Shasbin."

*United States v. Watson*, No. 17-2558 (8th Cir. 2018). Thus, plaintiff's arguments are belied by the appellate court's finding that the record reflected the inventory search yielded two photocopied Sher & Shabsin checks.

Plaintiff also claims, in conclusory fashion, that Scowcroft falsified other evidence. Again, plaintiff's allegations are wholly conclusory and fail to state a viable claim. *See Iqbal,* 556 U.S. at 678. Plaintiff also claims Scowcroft harassed his family and friends. However, plaintiff lacks standing to bring claims on behalf of others. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating that to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Further, while federal law authorizes plaintiff to plead and conduct his own case personally, 28 U.S.C. § 1654, he is not a licensed attorney and therefore may not represent other individuals in federal court. *See Lewis v. Lenc–Smith Mfg. Co*., 784 F.2d 829, 830 (7th Cir. 1986).

Next, plaintiff avers he brings a conspiracy claim against Berry and Scowcroft under 42 U.S.C. § 1985 based upon their acts as described above. Although plaintiff does not specify the subsection of § 1985 under which he is proceeding, the Court will liberally construe the allegations under § 1985(3), which provides in pertinent part:

> If two or more persons . . . conspire . . . for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

15

First, as discussed above, plaintiff's allegations of wrongdoing on the part of Scowcroft are conclusory and belied by the record. There is therefore no basis for plaintiff's claim that she acted with another to commit wrongdoing. Second, because Berry's alleged participation in the alleged conspiracy consists of otherwise immune acts, she is absolutely immune from the conspiracy charge. *See Woodworth v. Hulshof,* 891 F.3d 1083, 1089 (8th Cir. 2018). Finally, plaintiff's allegations of a conspiracy are wholly conclusory, and while he offers his own unsupported statements that the defendants acted with improper motives, he does not allege the conspiracy was motivated by the type of class-based, invidiously discriminatory animus required for a successful § 1985(3) claim. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) and *Federer v. Gephardt*, 363 F.3d 754, 757–58 (8th Cir. 2004).

The Court now addresses plaintiff's individual-capacity claims against Jensen. Plaintiff states he brings a claim of supervisory liability against Jensen pursuant to *Bivens*. Plaintiff makes no attempt to allege Jensen was directly involved in Berry's alleged misconduct or in any other misconduct. Instead, he offers bare conclusory statements that Jensen failed to adequately supervise and/or train Berry. These claims are premised entirely upon *respondeat superior,* and are not cognizable in a *Bivens* action. *See Iqbal,* 556 U.S. at 676.

For all of the foregoing reasons, the Court concludes that the complaint is frivolous and/or fails to state a claim upon which relief may be granted against Berry, Scowcroft, and Jensen.

The Court now turns to plaintiff's FTCA claim against the United States. It is well established that the United States is entitled to sovereign immunity, and cannot be sued without its consent. *Honda v. Clark*, 386 U.S. 484, 501 (1967). However, the Federal Tort Claims Act (FTCA) waives federal sovereign immunity for injuries caused by a negligent or wrongful act or omission of a government employee, in which private individuals under similar circumstances

would be liable under State law. *Newcombe v. United States*, 933 F.3d 915, 917 (8th Cir. 2019). According to statute:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent act or omission of any employee of the Government while acting within the scope of his office of employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). Complete exhaustion of administrative remedies is required before the judicial process is invoked. *McNeil v. United States*, 508 U.S. 106, 112 (1980). Exhaustion of administrative remedies is a jurisdictional prerequisite. *Porter v. Fox*, 99 F.3d 271, 274 (8th Cir. 1996). That is, before bringing an action against the United States, a claimant must present his or her claim to the appropriate federal agency, and the agency must make a final decision. *Bohac v. Walsh*, 386 F.3d 859, 861 (8th Cir. 2004). Failure to comply with the exhaustion requirement will result in the dismissal of the suit for lack of subject-matter jurisdiction. *See Mader v. United States*, 654 F.3d 794, 808 (8th Cir. 2011) (concluding "that conformity with § 2675(a) is a jurisdictional term of the FTCA's limited waiver of sovereign immunity"). *See also Allen v. United States*, 590 F.3d 541, 544 (8th Cir. 2009) (stating that "[a] federal district court does not have jurisdiction over an FTCA claim unless it was first presented to the appropriate federal agency").

In the case at bar, plaintiff makes no attempt to establish he presented his claim to the appropriate federal agency before filing the instant complaint. Accordingly, plaintiff's FTCA claim is subject to dismissal for lack of subject matter jurisdiction. *See Porter*, 99 F.3d at 274 and *Mader*, 654 F.3d at 808. Even if plaintiff had alleged compliance with 28 U.S.C. § 2675(a), his FTCA claim would be dismissed. Plaintiff makes no attempt to allege liability in accordance with the substantive tort law of the State of Missouri. Instead, he specifically avers he brings the FTCA claim to redress violations of rights secured by the United States Constitution. Such a claim is not

17

actionable under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994) (constitutional torts are not actionable under the FTCA; to be actionable under the FTCA, a claim must allege, *inter alia*, that the United States would be liable to the plaintiff as a private person in accordance with the law of the place where the act or omission occurred).

Additionally, plaintiff's FTCA claim is not cognizable because it calls into question his outstanding criminal judgment. In *Parris v. United States*, the Tenth Circuit Court of Appeals observed that because the FTCA, like 42 U.S.C. § 1983, creates tort liability for government officials, "the same common law principles that informed the Supreme Court's decision in [*Heck v. Humphrey*] should inform the decision of whether an action under the FTCA is cognizable when it calls into question the validity of a prior conviction." 45 F.3d 383, 385 (10th Cir. 1995). In *Echols v. Dwyer*,[6] this United States District Court adopted the reasoning of the *Parris* Court and determined that "an action under the FTCA is not cognizable when it calls into question the validity of a prior conviction." 914 F. Supp. 325, 327 (E.D. Mo. 1996), *aff'd, Echols v. United States,* No. 96-2071 (8th Cir. 1996). In dismissing the plaintiff's complaint for failure to state a claim upon which relief may be granted, the *Echols* Court determined that "[b]ecause plaintiff's conviction has been affirmed on direct appeal, and his motion under 28 U.S.C. § 2255 is pending, and he has not demonstrated that his conviction has been declared invalid or otherwise called into question, plaintiff's complaint is not cognizable under the FTCA." *Id. See also Dare v. United States*, 264 F. App'x 183, 185 (3d Cir. 2008) (finding FTCA claims were barred by *Heck*); *Jones v. Shields*, 107 F. App'x 725, 727 (9th Cir. 2004) (same). Plaintiff's FTCA claim against the United States is subject to dismissal on this basis, as well.

---

[6] Upon the motion of defendant Dwyer, the Court substituted the United States as the proper party defendant to the plaintiff's FTCA claim.

18

The Court now addresses plaintiff's motions. In the "Motion to Supplement Complaint" (ECF No. 9), plaintiff states he wishes to supplement the complaint with a copy of the Motion to Alter or Amend Judgment and supporting exhibits he filed on October 14, 2020 in his pending 28 U.S.C. § 2255 case, asking the habeas court to reconsider its denial of his motion to compel Berry's testimony.[7] The material plaintiff seeks to add and the events described therein predate the complaint, and therefore cannot constitute a supplemental pleading. *See* Fed. R. Civ. P. 15(d). Additionally, plaintiff makes no attempt to explain how the material will serve to supplement the complaint, and having reviewed the material, the Court concludes it serves only to duplicate the claims and argument asserted in the complaint and addressed above.

In the "Motion to Clarify and Request Disposition of Complaint" (ECF No. 11), plaintiff indicates he wishes to preserve his right to add the Maryland Heights Police Department and Officer Matt Schmitz as defendants, and sue them for false arrest. However, claims of false arrest against the Maryland Heights Police Department and Officer Schmitz would necessarily imply the invalidity of plaintiff's convictions, continued imprisonment, or sentences, and plaintiff has not demonstrated that his convictions or sentences have been reversed, expunged, or called into question by issuance of a writ of habeas corpus. Accordingly, such claims would be barred by *Heck v. Humphrey.* It would therefore be futile to give plaintiff the opportunity to file an amended complaint to bring claims of false arrest against the Maryland Heights Police Department and Officer Schmitz. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Plaintiff also demands that this Court dispose of his complaint because it has been pending more than sixty days. This Court was not required to dispose of plaintiff's complaint within such period of time. Nevertheless, as plaintiff's complaint is being dismissed at this time, his request is moot.

---

[7] On February 1, 2021, the habeas court denied plaintiff's motion. *See Watson v. United States,* No. 4:19-cv-1545-AGF, ECF No. 147.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $1.00 within **twenty-one (21) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice under 28 U.S.C. § 1915.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (ECF No. 3) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's "Motion to Supplement Complaint" (ECF No. 9) and "Motion to Clarify and Request Disposition of Complaint" (ECF No. 11) are **DENIED**.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 9th day of April, 2021.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**